## Carter v. Carter.

### Appeal from Mercer Circuit Court.

#### (Decided October 12, 1910.)

Divorce and Alimony—Husband Forcing Wife to Leave Home—Allowance of Alimony and Attorney's Fee.—In an action by a wife against her husband for divorce and alimony, where it is shown by the evidence that she was in bad health and was compelled to go to her father's to live by reason of the abuse and ill treatment of her husband who said, if she didn't go he was going to make her go, and was glad to get rid of her, and afterwards sent her what things belonged to her. Held, that he as truly drove her away as if he had taken hold of her and pushed her out of his house, and under the evidence the court should have granted her a divorce and adjudged the husband to pay the cost and a reasonable fee to her attorney, and a reasonable allowance for alimony considering what property he had and his earning power, and the fact that he had a child to take care of.

E. H. GAITHER for appellant.

C. E. RANKIN for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Lena Carter brought this action against her husband, Thompson Carter, for a divorce. She alleged in her petition that without fault on her part, he on January 10, 1909, abandoned her, and has since refused to live with her, or furnish her any means of support. He filed an answer in which he denied the allegations of the petition, and pleaded that without fault on his part, she had abandoned him. He made his answer a counterclaim, and prayed a divorce from her. A reply was filed which made up the issue; and proof was taken. On final hearing the circuit court dismissed both the petition and the counter-claim. He adjudged the wife her cost, but did not allow her an attorney's fee. From this judgment she appeals.

The proof shows these facts: They were married in the year 1901; he was a widower with one child; she had been married before, but had been divorced. They lived together until the summer of 1908, when she left him and went to her father's. She stayed at her father's until October, when she returned to her husband, and they lived together from that time until the tenth of January, when she again left her husband's home. Her husband had a horse and buggy, but no other property except the household furniture. He was a tenant on a farm, and about thirty-five years old; she was about thirty-three years old, and had tuberculosis and a uterine trouble, in consequence of which hysteria had developed. Previous to her first separation from her husband, she was in bad health. Her health improved while she was at her father's, and on her initiative, and in fact at her entreaties, the marriage relation was again taken up. The following January she was taken sick. Her husband sent for her sister, and she and her husband went to the house, and remained there two nights and one day. During this time the wife was sick and vomiting. The sister suggested that she could not stay any longer, and the wife asked her husband to allow her mother to come. Thereupon he cursed her and her mother, too. She was having fainting spells one after another. He did not wait on her or take any interest in her; but when she would rise up in bed to vomit, would tell her to lie down, and not be raising up, nobody could sleep for her. The next morning the sister suggested that she would take her to her house, and he agreed for her to go, telling them that he would send them word when to come and get her things; that nobody must come into the house until he sent word. The wife was taken to her father's, and the husband at no time went there to see her or to ask after her, and has provided nothing for her since. There was nobody at the house but her and her husband when her sister went there; and the wife's condition was such that it was not practical for her to stay there without somebody to take care of her. Though he was invited to come to her father's to see her, he refused to do so. He said afterwards that when she took these spells, nobody could live with her in peace, and that he had it in his mind, if she didn't go, he was going to make her go, or as he expressed it, if she didn't go he was going to drive her off, and he was glad to get rid of her. The wife, when taken to her father's house,

was treated by a physician, who was called in by him and was for some time in a very bad state of health. Some weeks after, they sent over to the house, and the husband picked out what things belonged to the wife, and the things that he set out to the wife were taken over to her. In the following March he gave up the house, and went to his father's, and he has not since provided a home to which his wife might come if she wished, or treated her with the slightest consideration. On the contrary, his entire conduct is in keeping with his declaration that he was glad she was gone and if she had not gone he would have driven her off. To say that this sick woman deserted her husband under such circumstances, is to shut one's eyes to the truth. He as truly drove her away from his home by his conduct as if he had taken hold of her and pushed her out. Hall v. Hall, 25 R. 1305; Kean v. Kean, 5 R. 67. Under the evidence, the court should have granted her a divorce, and should have adjudged the husband to pay the cost of the action and a reasonable fee to her attorney. He should also have made her a reasonable allowance for alimony, considering what the husband had, his earning power, and the fact that he had a child to take care of.

Judgment reversed, and cause remanded for further proceedings consistent herewith.